William A. Kershaw (State Bar No. 057486)
Stuart C. Talley (State Bar No. 180374)
Lyle W. Cook (State Bar No. 148914)
**KERSHAW, CUTTER, & RATINOFF LLP**
401 Watt Avenue
Sacramento, CA 95864
Telephone: (916) 448-9800
Facsimile:  (916) 669-4499

*Attorneys for Plaintiff*

Jonathan Auerbach
Jerome M. Marcus
Steven G. Tyson
**MARCUS & AUERBACH LLC**
101 Greenwood Avenue, Ste. 310
Jenkintown, PA 19046
Telephone:  (215) 885-2250
Facsimile:   (888) 875-0469

*Attorneys for Plaintiff, pro hac vice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA FAFARD, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC.; BEST BUY CO., INC.; and INCOMM HOLDINGS, INC.,<br><br>Defendant. | Case No. 4:12-CV-05125-CW<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 12, 2014<br>Time: 2:00 p.m.<br><br>Courtroom 2, 4th Floor<br>The Honorable Claudia Wilken |

## PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**NOTICE IS HEREBY GIVEN** that on June 12, 2014, or as soon thereafter as the matter may be heard by the Honorable Claudia Wilken, in Courtroom 2 of the United States District Court for the Northern District of California, Representative Plaintiff Barbara Fafard and Class Counsel will and do move this Court for final approval of the proposed Settlement. This Motion is based upon the supporting Memorandum attached hereto, the Declarations of Class Counsel, the Honorable Ronald Sabraw, (Ret.) and Jeffrey Gyomber, filed herewith, the executed Stipulation of Settlement and Release filed with Plaintiff's Motion for Preliminary Approval, the records, pleadings and papers filed in this action and such other oral argument and documentary evidence as may be presented to the Court at the hearing of this Motion.

## MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### I. INTRODUCTION

Plaintiff Barbara Fafard ("Representative Plaintiff" or "Plaintiff") hereby seeks final approval of the class action Settlement between herself and the putative Class Members, on the one hand, and defendants Apple Inc., ("Apple"), Best Buy Co., Inc. ("Best Buy") and Interactive Communications International, Inc. (wrongly identified as InComm Holdings, Inc.) ("InComm") on the other.[1]

Class Counsel believes that the Settlement represents an extraordinary result for the class and that the class is better served by the Settlement than it would be by continued litigation. The result achieved constitutes a recovery—*net of attorney's fees, litigation expenses, the service award to the named plaintiff, and the costs of notice and settlement administration*—of 100% of the class's damages as estimated by Plaintiff.

This motion is not opposed by Defendants, and the Settlement has not been objected to by

---

[1] A copy of the fully executed Stipulation of Settlement and Release between Plaintiff and Defendants was previously filed with Plaintiff's Motion for Preliminary Approval as Exhibit 2 to the Declaration of Jonathan Auerbach ("Auerbach Decl.").

1  a single Class Member. Neither has even a single Class Member opted out of the Settlement.
2  (Declaration of Jeffrey Gyomber filed herewith ["Gyomber Decl."] at ¶¶ 8-9.) Pursuant to this
3  Court's Order preliminarily approving the Settlement, Class Members were given notice of the
4  Settlement, the Plan of Distribution, and the requests for attorneys' fees, expenses, and service
5  awards. The absence of any objection by any Class Members, and of even a single opt-out,
6  demonstrates overwhelming support for the Settlement and provides further reason for its
7  approval. (Gyomber Decl. at ¶¶ 2-9.)

8  **II.    A BRIEF OVERVIEW OF THE LITIGATION**

9  After conducting a factual investigation and doing the necessary legal research, this case
10 was filed as a class action by Representative Plaintiff on behalf of herself and a class of persons
11 who received iTunes Gift Cards purchased from Best Buy retail stores during the period from
12 September 2007 through December 2009.

13 Plaintiff filed her Complaint on October 3, 2012. Plaintiff alleged that, in 2009, she
14 received two iTunes Gift Cards that her daughter had purchased from a Best Buy retail store.
15 (Compl. ¶¶ 20-21.) In January 2012, Plaintiff attempted to redeem the two iTunes Gift Cards
16 with the iTunes Store, but allegedly was informed that the cards had been cancelled. (*Id.* at ¶ 23.)
17 Plaintiff further alleges that numerous iTunes Gift Cards were deactivated before cardholders
18 redeemed their face value through the iTunes Store. (*Id.* ¶ 29.)

19 Plaintiff asserted six claims: (1) breach of contract (only against Apple and Best Buy); (2)
20 breach of the implied covenant of good faith and fair dealing (only against Apple and Best Buy);
21 (3) unjust enrichment; (4) conversion; (5) violation of the California Unfair Competition Law
22 ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (6) violation of the California Consumer
23 Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750 *et seq.* Plaintiff sought
24 restitution, compensatory damages, and attorney's fees.

25 On October 17, 2013, through the diligent efforts of Class Counsel, the parties reached a
26 substantial Settlement providing for, *inter alia*, a recovery of 100% of the amount at issue in this
27 case. These benefits were achieved after two years of intensive efforts by experienced counsel to
28 investigate, develop, prosecute and ultimately resolve this national class action litigation.

1 (Auerbach Decl. at ¶¶ 4-14.) This case involved substantial factual and legal complexities and was fraught with risk from the outset: Plaintiff's class claims, particularly those asserted on a nationwide basis, were vulnerable based in part on variations in state law requirements for establishing violations of breach of warranty and state consumer fraud statutes.

Class Counsel engaged in nearly seven (7) months of intense, hard-fought settlement negotiations. During five (5) of those months, Class Counsel negotiated with the assistance of a well-respected and experienced mediator, the Honorable Ronald Sabraw, (Ret.), who convened the parties both by in-person and by telephone appearances on numerous occasions to overcome multiple obstacles in settlement discussions. (*See* Declaration of the Hon. Ronald Sabraw filed herewith ["Sabraw Decl."].) With the mediator's assistance, Class Counsel were ultimately able to provide complete recovery to the Class. Class Counsel have achieved a significant result for the Settlement Class.

The terms of the Settlement Agreement were presented to the Court for preliminary approval, which was granted on April 17, 2014. The Order Granting of Preliminary Approval set a June 12, 2014 Final Fairness Hearing and established a timetable for dissemination of notice to the Class and a schedule for the timely submission of opt outs and objections.

Notice was given pursuant to the Court's directive, and, as the Declaration of Jeffrey Gyomber sets forth, notice has indeed been disseminated to nearly 170,000 persons through both email and internet advertisement. (Gyomber Decl. at ¶¶ 3-7.) No Class Member has opted out, and none has objected. (Gyomber Decl. at ¶¶ 8-9.)

**III. SUMMARY OF SETTLEMENT TERMS**

The Settlement has provided approximately 287,218 holders of deactivated iTunes Gift Cards with either iTunes account credits for the full value of those iTunes Gift Cards or the ability to redeem those iTunes Gift Cards through the iTunes Store. The pre-redemption value of the affected cards is $6,218,295. (*See* Stipulation of Settlement and Release, ¶1.14.)

In addition to the restoration of the full value of the affected iTunes Gift Cards, Defendants have agreed to bear the full cost of notice, settlement administration, attorney's fees, litigation expenses incurred on behalf of the Class and an incentive payment of $5,000 for the

Representative Plaintiff. Class Members have achieved a complete recovery.

## IV. FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE UNDER THE CIRCUMSTANCES

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation.[2] *See* 4 Newberg § 11.41, at pp. 87-88 (and cases cited therein); *see also Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 at 1276 (9th Cir. 1992). A settlement should be approved if it is fundamentally fair adequate and reasonable. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Wershba v. Apple Computer, Inc.* 91 Cal. App. 4th 224, 234-35 (2001) ("In general questions whether a settlement was fair and reasonable, whether certification of the class was proper, and whether the attorneys' fee award was proper are matters addressed to the trial court's broad discretion.") Accordingly, a court's decision to approve a class action settlement maybe reversed only upon a showing of "clear abuse of discretion." *See, e.g., Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998). The determination as to whether a settlement should be finally approved requires the balancing of several factors, which may include "some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Torrisi*, *supra*, 8 F.3d at 1375-1376 (citation omitted). The Ninth Circuit recognizes: "This list is not exclusive and different factors may predominate in different factual

---

[2] For purposes of finally approving a class action settlement, the law of the state of California and federal law are substantially similar. California class action law in this area often looks to the decided cases in the Ninth Circuit and other circuits. It is not entirely clear in this case (which asserts state law claims, but was removed on the grounds of complete preemption) whether state or federal law applies to the Settlement. Plaintiff has endeavored to show that final approval is appropriate under both state and federal law, which do not substantially differ.

contexts." *Id.* California decisions are in accord. *See, e.g., Wershba*, *supra*, 91 Cal. App. 4th at 244-45. Consideration of these factors strongly supports final approval of the proposed Class Settlement and Plan of Distribution.

### A. The Strength Of Plaintiff's Case Measured Against The Results Obtained In Settlement Fully Supports Final Approval Of The Class Settlement.

The results achieved on behalf of the Class in the proposed Settlement are significant, and even extraordinary, when due consideration is given to the strengths and weaknesses in the Plaintiff's case. Here, despite the many legal and factual challenges confronting the class case, a recovery was achieved that represents a 100% recovery net of all of fees costs. No more could possibly be expected.

#### 1. Value of the Settlement

The value of the allegedly deactivated Gift Cards at issue in this case is $6,218,295. This value has been completely restored by the Settlement, and thus represents a 100% recovery by the Class.

The Settlement also provides for additional benefits, including Defendants' agreement to bear all of the costs of notice, settlement administration, attorneys' fees and costs, and the service award to the Representative Plaintiff. These additional dimensions of the Settlement amount to up to approximately $1,005,000—including attorneys' fees and costs of $750,000, the service award of $5,000, and costs of notice and settlement administration of approximately $250,000. (Gyomber Decl. at ¶ 10.) All such costs would otherwise be chargeable to individual Class Members. Had these costs been borne by the Class, the net amounts available to Class Members would be less.

#### 2. Comparison of the Settlement Payments to the Amount Potentially Recoverable Fully Supports Final Approval of the Settlement.

The amount that might be reasonably expected in recovery if the claims were fully litigated is a useful and necessary point of comparison to assess the level of success achieved on behalf of the Class by reason of the Settlement. *See, e.g., In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000) (suggesting that courts compare the

settlement amount to "estimates of the maximum amount of damages recovered in a successful litigation").

Of course, settlements that are fair, reasonable and adequate do not need to, and rarely will, approach 100 cents on the dollar of what could be recovered at trial. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco,* 688 F.2d 615, 628 (9th Cir. 1982). In this instance, however, Plaintiff and Class Counsel have indeed achieved just that—a complete restoration of the value of all of the Gift Cards at issue in this case.

More typically, settlements in class actions reflect a large discount because the cases are resolved short of trial. *See*, *e.g*., *Lazy Oil Co. v. Wotco Corp*. 95 F.Supp.2d 290, 319 (W.D. Pa. 1997) (approving settlement that provided 5.35% of total potential damages); *In re Crazy Eddie Securities Litigation*, 824 F. Supp. 320, 323-24 (E.D.N.Y. 1993) (approving settlement of approximately 10% of potential recovery); *Entin v. Barg*, 412 F. Supp. 508, 514 (E.D. Pa. 1976) (settlement approved constituting 17% of the potential recovery); *In re Four Seasons Securities Laws Litigation*, 58 F.R.D. 19, 37, 41 (W.D. Okla. 1972) (securities class action settlement approved for under 8% of the potential recovery); *In re Heritage Bond Litigation* 2005 WL 1594389 (C.D. Cal., 2005) (Appendix Exhibit 8) (settlement approved amounted to 23% of recovery net of attorneys' fees); *Glass v. UBS Financial Services, Inc.*, 2007 WL 221862 (N.D. Cal., 2007) at *9 (Appendix Exhibit 2) (the Settlement represented 25 to 35% of the loss to the class.) The complete recovery in this class action fully supports final approval of the proposed Settlement.

## V. THE COMPLEXITY, EXPENSE, DURATION AND RISK OF FURTHER LITIGATION FAVORS FINAL APPROVAL OF THE CLASS SETTLEMENT.

Litigation necessarily involves risk, and the only conceivable result of litigation in place of the Settlement achieved here would have been the possibility of Plaintiff and the Class receiving less. The Settlement was reached two years after the case was initiated, but before class certification had been addressed. A consideration of the complexity, expense, duration, and risk

of further litigation is a factor to be considered in approving a settlement proposal and therefore supports final approval of the Settlement in this case. *See Mego Financial Securities Litigation*, *supra*, 213 F.3d at 458.

### B. The Proceedings Are At A Stage That Allows For An Informed Evaluation Of The Settlement.

Class Counsel and the Representative Plaintiff were only able to achieve a Settlement with the three Defendants after more than two years of litigation. This includes significant pre-filing investigation, extensive legal research regarding the original and amended complaints, an extensive investigation and confirmatory discovery after the case was filed, and multiple intensive meetings and efforts to settle the case. (*See* Auerbach Decl.; Sabraw Decl. at ¶¶ 4-8.) These years of effort placed Class Counsel and the parties in a position to fully evaluate the conditionally certified claims and warrants final approval of the negotiated Settlement. The confirmatory discovery and investigation, and the maturity of the proceedings goes well beyond what is generally needed to support final approval and provides sufficient information to make an informed decision about the Settlement. *See Mego Financial Securities Litigation*, *supra*, 213 F.3d at 459.

### C. The Experience Of Class Counsel And Their Support Of The Settlement Supports Final Approval.

Settlement in this matter was achieved only after the parties engaged in arm's length settlement discussions.[3] The product of the extensive, adversarial negotiations is the proposed Settlement. (Sabraw Decl. at ¶¶ 4-8.) Courts have long held that the views of the attorneys actively conducting the litigation, while not conclusive, are entitled to considerable weight. *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th

---

[3] An important consideration in any proposed settlement is that it be the product of serious, informed, non-collusive negotiations and that is what occurred here. The fact that separate mediations were conducted and overseen by a neutral third party and that the core substantive terms of the agreement were reached as a result of formal mediation further evidences the non-collusive nature of the negotiations. *See In re Austrian and German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000), aff'd, 236 F.3d 78 (2d Cir. 2001).

Cir. 1981). Class Counsel support this Settlement without reservation and believe that it represents an extraordinary result providing substantial benefits to Class Members.

### D. No Class Members Have Objected To Or Opted Out Of The Settlement, Which Strongly Supports Final Approval.

The terms of the Settlement gave all members of the Settlement Class the opportunity to request exclusion, *see* Fed. R. Civ. Proc., Rule 23(e)(c)(3), and the notice provided Class Members with complete information about the Settlement. (Gyomber Decl. at ¶¶ 2-7.) There are no objections to the Settlement and no opt outs. (Gyomber Decl. at ¶¶ 8-9.) The reaction of the Class has been overwhelmingly in favor of the Settlement and strongly supports final approval. *See Mego Financial Securities Litigation*, *supra*, 213 F.3d at 459.

## VI. CONCLUSION

After two years of hard-fought litigation and lengthy negotiations, this Settlement on behalf of the holders of iTunes Gift Cards purchased at Best Buy has been achieved. Based upon all of the above, Class Counsel respectfully request that the Court grant this motion for final approval of the Settlement.

Dated: May 29, 2014     Respectfully submitted,

KERSHAW, CUTTER & RATINOFF, LLP

*/s/ William A. Kershaw*
_____
WILLIAM A. KERSHAW

MARCUS & AUERBACH LLC

*/s/ Jonathan Auerbach*
_____
JONATHAN AUERBACH

*Attorney for Plaintiff*